UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN JOHN PALMIERI,<br><br>                        Plaintiff,<br>v.<br><br>GEORGE GIURBINO, Acting Warden<br><br>                        Defendant. | Civil No. 06cv1201-LSP<br><br>ORDER:<br><br>(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS<br><br>(2) ISSUING A CERTIFICATE OF APPEALABILITY |

      Petitioner Carmen John Palmieri ("Petitioner"), a state prisoner represented with counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his sentence in San Diego Superior Court case number D043617. Respondent George Giurbino ("Respondent") has filed an Answer to the Petition. Petitioner has filed a Traverse to Respondent's Opposition. On August 16, 2006, Petitioner and Respondent stipulated to the undersigned's jurisdiction for all issues raised in this case.

I.

Factual History

      On November 17, 2003, Petitioner plead no contest to fifty-eight counts of grand theft, fifty-eight counts of making false statements in connection with the sale of a security and twenty eight counts of theft over $400.00 from an elderly person or dependent adult. The parties stipulated that the factual basis for the Petitioner's plea would be derived from the

preliminary hearing transcript and the prosecution's investigative reports. (Respondent's Lodgment No. 3, at 3). The following facts are taken from those documents.

From early 1999 to late 2001, Petitioner defrauded approximately 190 investors of nearly 13 million dollars by soliciting victims to invest in viatical contracts that were never obtained. Twenty-eight of the victims were over 65 years old.

In 1996, Petitioner obtained a license to sell viatical contracts[1] in California. Then, in San Diego, he established a viatical settlement company, National Medical Funding. National Medical Funding was incorporated and solely owned by Petitioner who was listed as the President of the Company. National Medical Funding advertised in gay and lesbian magazines hoping to attract those terminally ill suffering with AIDS. Petitioner's company also advertised in senior publications.

In addition to National Medical Funding, Petitioner also established Trust Management Services. Petitioner advertised Trust Management Services as an independent escrow company, which is a legal requirement for the sale of viaticals. However, Trust Management Services was comprised of only a mail drop at Mail Boxes Etc. in San Francisco, California. Petitioner was discovered to be the sole controller of Trust Management Services, an unlawful interest in the viatical settlement context.

Investors were told that to invest in viatical contracts, they should deposit their funds with Trust Management Services. Investors were led to believe that Trust Management Services was an independent escrow company, when it was, in fact, owned and operated by Petitioner. Investors then would receive letters from both Trust Management Services, confirming their deposit, and from National Medical Funding, identifying the name of a viator, the name of the viator's life insurance company, and confirming that the investor had been named the irrevocable beneficiary of the viator's life insurance policy. All correspondence was signed by Lawrence C. Reed, a former business associate of Petitioner. It was later

---

[1] A viatical contract involves the purchase of a life insurance policy for the life of a terminally ill person (the viator) by a settlement company. The settlement company reviews the medical history of the viator and solicits funds from potential investors to fund the purchase of a life insurance policy. Viators benefit by receiving payments while they are still alive, and investors receive a proportionate percentage of the policy benefits upon the death of the viator.

discovered that Reed's signature had been forged and his name was used without his knowledge.

No viatical contracts were ever purchased on behalf of investors. Rather, the money procured from investors was withdrawn from Trust Management Services and paid to either the Petitioner personally or to his various other business interests. In total, Petitioner deposited approximately $32 million dollars into the Trust Management Services account between January 1999 and May 2002. Of the $32 million, $21.3 million came from investors.

Petitioner gave investors 12 to 14 month income projections concerning the maturity of their investments. When investors did not receive payment, they attempted to contact Reed (the name appearing on all correspondence from Trust Management Services). Most efforts were unsuccessful and investors were seldom able to speak to Petitioner. Most calls were forwarded to an answering service. Investors' efforts to obtain payment resulted in receipt of insufficient fund checks, partial payments, and deflection of payment inquiries with promises to roll investments into other viatical accounts.

Investors' complaints to the Department of Corporations eventually caused the execution of several search warrants in March 2002 at Petitioner's corporate office, several related businesses, storage facilities and his residence. The searches uncovered a script used to procure investors and a list of potential viators. On October 23, 2002, an arrest warrant was issued and Petitioner was apprehended by authorities.

II.

Procedural History

On November 17, 2003, Petitioner plead no contest to fifty-eight counts of grand theft [California Penal Code § 487(a)], fifty-eight counts of making a false statement in connection with the sale of a security (California Corporations Code §§ 25401 and 25540), and twenty-eight counts of theft over $400.00 from an elderly or dependent adult [California Penal Code § 368(d)].[2] Petitioner is currently serving an aggregate term of 30 years in prison.

Petitioner's sentence was composed of an upper term of four years for the §368(d)

---

[2] All further references to code sections are to the California Penal Code.

1  theft alleged in Count 33, and consecutive one-year terms (one-third of the middle term) on
2  21 other counts alleging theft in violation of 368(d).  The court also imposed a consecutive
3  five-year upper term for the §186.11(a)(2) enhancement.  The court imposed concurrent
4  terms on 40 other counts, and stayed the sentence on the remaining counts under §654.
5  (Lodgment No. 6 at 4).

6  On April 14, 2005, the California Court of Appeal affirmed Petitioner's convictions.  On
7  June 29, 2005, the California Supreme Court denied the Petitioner's Petition for Review.  On
8  June 7, 2006, Petitioner filed a Petition for Writ of Habeas Corpus in this Court.  On June 15,
9  2006, the Petition was denied without prejudice.  On June 20, 2006, Petitioner filed a "First
10 Amended Petition" and Respondent timely filed an Answer.

11 On the date Petitioner entered his guilty plea, the United States Supreme Court
12 had already decided *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which holds that:
13 "Other than the fact of a prior conviction, any fact that increases the penalty for a crime
14 beyond the prescribed statutory maximum must be submitted to a jury, and proved
15 beyond a reasonable doubt."  *Id.* at 490.  However, the Supreme Court had not yet
16 announced its decision in *Blakely v. Washington*, 542 U.S. 296 (2004), in which the Court
17 defined the term "statutory maximum" as used in *Apprendi* to mean "the maximum
18 sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict*
19 *or admitted by the defendant.*"  *Id.* at 303 (emphasis in original).

20 On direct appeal, Petitioner claimed that his sentence violated *Blakely* because the
21 trial judge imposed two upper term sentences[3].  The imposition of the upper term
22 sentences was based on facts taken from the probation officer's report and admitted by
23 Petitioner at the change of plea hearing.  (Lodgment No. 1, Vol. 1).  Petitioner claimed
24 that because the facts used by the sentencing judge to impose the upper term sentences
25 were found under a preponderance of the evidence standard, the results amounted to a
26 denial of his right to have a jury determine, beyond a reasonable doubt, all facts essential
27 to his punishment as guaranteed by the Fifth, Sixth and Fourteenth Amendments within
28

---

[3]The sentencing judge imposed the upper terms for  violations of  §368(d) and §186.11(a)(2).

- 4 -                                                                                                                   **06 cv 1201**

1  the meaning of *Blakely* and *Apprendi*. (Lodgment No. 3.).

2  Petitioner further contended that the trial court erred in failing to cite any
3  aggravating factors as required by the California Rules of Court, Rule 421, and did not
4  expressly state which aggravating factors the trial court judge used in sentencing him to
5  the upper term on two counts of the indictment. Petitioner pointed to the trial judge's
6  language at sentencing to infer that the amount of money stolen and the age of the
7  victims were the only two aggravating factors considered by the trial judge.

8  On September 1, 2004, the California Supreme Court denied Petitioner's Petition
9  for Review. The California Supreme Court's order stated: "Petition for review denied
10 without prejudice to any relief to which defendant might be entitled upon finality of *People*
11 *v. Black*, 113 P.3d 534 (Cal. 2005) regarding the effect of Blakely v. Washington, (2004)
12 542 U.S._, 124 S.Ct. 2531, and United States v. Booker (2005) 543 U.S._, 125 S.Ct. 738,
13 on California law." (Lodgment No. 6).

14 Here, Petitioner contends that his sentence was increased above what would have
15 been imposed had the trial court selected the middle term on count 33 and not imposed
16 the upper term for a violation of §186.11(a)(2).[4] Petitioner contends he was denied his
17 right to have a jury determine beyond a reasonable doubt all facts essential to his
18 punishment as guaranteed by the Fifth, Sixth and Fourteenth Amendments, because the
19 facts relied on by the trial judge were taken from the probation officer's report and were
20 made under a preponderance of the evidence standard.

21                                    III.
22                            Standard of Review

23 Title 28, United States Code, § 2254(d), sets forth the following scope of review for
24 federal habeas corpus claims:

25    d) An application for a writ of habeas corpus on behalf of a person in
      custody pursuant to the judgment of a State court shall not be granted with
26    respect to any claim that was adjudicated on the merits in State court
      proceedings unless the adjudication of the claim—
27
      (1) resulted in a decision that was contrary to, or involved an
28

---

[4]Both enhancements each increased Petitioner's sentence by one year.

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254(d)(1)-(2) (West Supp. 2004).

To obtain federal habeas relief, Petitioner must satisfy either § 2254(d)(1) or § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000). The Supreme Court interprets § 2254(d)(1) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Lockyer*, 538 U.S. at 75-76); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *Early v. Packer*, 537 U.S. 3, 8 (2002). "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" *id.*, the state court decision will not be "contrary to" clearly established federal law.

## IV.

## Analysis

The California Supreme Court decided in *Black* that California's sentencing

1  scheme survives a *Blakely* and *Booker* challenge to the imposition of an upper term
2  because the statutorily enumerated factors permitted to be considered by a judge involve
3  the type of judicial factfinding that has been traditionally performed by a judge in the
4  context of exercising sentencing discretion, and are not the type of factfinding traditionally
5  engaged in by a jury. *People v. Black*, 35 Cal.4th 1238, 1254-58 (2005), *pet. for cert.*
6  *filed*, (No. 05-6793) (Sep. 28, 2005).  It is particularly relevant here that *Black* involved a
7  case in which there was a plea of guilty, and the trial judge imposed upper terms at
8  sentencing relying on facts taken from the probation officer's report.  *Id.* at 1245-48.
9  Although the United States Supreme Court has not yet acted on the petition for *certiorari*
10 in *Black*, it has granted *certiorari* in a case holding that California's sentencing scheme
11 survives a *Blakely* challenge to the imposition of an upper term because the upper term is
12 within the authorized range of punishment. *People v. Cunningham*, 2005 WL 880983 at
13 *9 (No. A103501) (Cal.Ct.App. April 18, 2005) (unpublished memorandum), *review*
14 *denied*, *People v. Cunningham*, No. S133971 (Jun. 29, 2005), *cert. granted*, *Cunningham*
15 *v. California*, 126 S.Ct. 1329 (2006).[5]

16 A)     Petitioner's *Blakely* Claims are Barred

17     *Blakely* does not apply retroactively to relief sought on collateral review.  *See Cook*
18 *v. United States*, 386 F.3d 949 (9th Cir. 2004) ("the Supreme Court has not made *Blakely*
19
20 retroactive to cases on collateral review"); *accord Cooper-Smith v. Palmateer*, 397 F.3d
   1236, 1246 (9th Cir. 2005).
21

22     Therefore, since Petitioner seeks collateral review of his sentence, his claim that
23 the upper term sentences imposed by the trial judge violated *Blakely* is barred.

24 B)     *Blakely* is inapplicable

25     Even if Petitioner's *Blakely* claims are not barred, it is well settled that *Blakely* is
26

27     [5] On October 11, 2006, *Cunningham v. California* was argued before the United States Supreme Court.
28

- 7 -                                                               **06 cv 1201**

also inapplicable in a case where a Petitioner admits to the facts which the sentencing judge uses to increase a sentence, or if those facts are found by a trial judge following a defendant's knowing and voluntary waiver permitting the sentencing judge to do so. *See Blakely v. Washington*, 542 U.S. at 303; *United States v. Huerta-Pimental*, 445 F.3d 1220, 1223 (9th Cir. 2006).

The record in this case clearly indicates that Petitioner pled no contest with the understanding that the trial judge would impose sentence based on consideration of the sentencing documents. (Respondent's Lodgment No. 2. , Vol. 2., at 132-135). The trial judge based Petitioner's sentence on the information contained in the sentencing documents presented to him. *Id.* It appears, though not clearly, that the trial judge adopted the recommendations of the probation officer with respect to aggravating and mitigating factors. (Lodgment No. 1., Vol. 2., at 198, 203). The only mitigating factor contained in the probation report was Petitioner's insignificant criminal history. (Lodgment No. 2., Vol. 2., at 159). The factors in aggravation included are: (1) the manner of the crimes indicated planning, sophistication, and professionalism, and (2) additional criteria reasonably related to the decision being made - numerous victims not charged in the indictment. (Lodgment No. 2., Vol., 2 at 159). These aggravating factors are both statutory factors that could have been considered had there been a trial. *See Black*, 35 Cal.4th at 1248.

C. <u>Record of Aggravating Factors</u>

Under §1170(b), the trial court may properly rely on evidence introduced at the sentencing hearing and on the probation officer's report. In doing so, the trial court must state which factors, if any, are used in aggravation. Here, that did not occur. (Lodgment No.

1, Vol. 2, at 193-198).

Petitioner asserts that here, the trial judge erred in failing to state upon which factors he relied in aggravation of count 33 and the imposition of the §186.11(a)(2) enhancement. (Lodgment No. 3). No language has been discovered in the sentencing dialogue of the trial judge that supports the imposition of the upper term on count 33 or for the §186.11 enhancement.

D. <u>Harmless Error</u>

If *Blakely* were to apply retroactively on relief sought for collateral review and was applicable here (which it is not), any violation of *Blakely* was harmless, particularly in light of Petitioner's possible and ultimate sentence, the number of victims and the number of separate instances of criminal conduct.[6] See *United States v. Lyons*, 454 F.3d 968 (9th Cir. 2006) (holding that Booker error is subject to harmless error review). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). Further, the state bears the burden of proving that the sentencing court's error was "harmless." *United States v. Beng-Salazar*, 452 F.3d 1089, 1096 (9th Cir. 2006).

Here, as the Court of Appeal noted, "the trial court carefully imposed a sentence of 30 years by specifying a sentence on each of the 144 counts, some being the upper term, some consecutive terms and some concurrent terms. With 144 counts, there were innumerable combinations that would result in a 30-year term – many of which would not require imposition of the upper term on any count." (Lodgment No. 6, at 13). Therefore, to remand this matter for resentencing would be illogical given the obvious ability of the trial court to have imposed a 30 year sentence without imposing the upper term on any of the 144

---

[6] Petitioner's possible exposure in this case was 110.6 to 117 years imprisonment. Petitioner pled no contest to 144 offenses and admitted both enhancements alleged in the information.

counts to which Petitioner pled no contest.

Under the circumstances, where Petitioner admitted both enhancements when he pled no contest, because there are facts in the record that indicate that the enhancements were proper, and because a 30 year sentence could have been imposed without imposing an upper term, any error by the trial court judge in failing to state those facts on the record is harmless. As a result, Petitioner's Petition for Writ of Habeas Corpus is DENIED.

However, mindful of the fact that related issues have been recently litigated in the United States Supreme Court, the Court ISSUES a Certificate of Appealability with respect to the claims presented in the Petition. See *Lambright v. Stewart*, 220 F.3d 1022, 1024-25 (9th Cir. 2000) [providing the threshold of a "substantial showing of the denial of a constitutional right," is met by demonstrating that: (1) the issues are debatable among jurists of reason; or (2) that a court could resolve the issues in a different manner; or (3) that the questions are adequate to deserve encouragement to proceed further].

DATED: December 7, 2006

Hon. Leo S. Papas
U.S. Magistrate Judge